IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CITY OF MIAMI GARDENS, a Florida
municipal corporation, and SKANSKA USA
BUILDING, INC., a foreign corporation,

   Plaintiffs,        CIVIL ACTION

v.

              Case No. 1:15-cv-23334-KMW

URS CORPORATION SOUTHERN, a foreign
corporation, URS CORPORATION, a foreign
corporation, and MARK W. ZIMPELMAN, an
individual,

   Defendants.
_____/

DEFENDANT URS CORPORATION SOUTHERN'S AMENDED
ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

   Defendant URS CORPORATION SOUTHERN ("URS Corporation Southern") files its

Amended Answer and Affirmative Defenses to Plaintiff CITY OF MIAMI GARDENS ("City")

and SKANSKA USA BUILDING, INC.'s ("Skanska") Amended Complaint, and states:

PARTIES, JURISDICTION AND VENUE

   1.   Admitted for jurisdictional purposes only without admitting any liability.

   2.   Without knowledge or information sufficient to form a belief about the truth of

the allegations.

   3.   Without knowledge or information sufficient to form a belief about the truth of

the allegations.

   4.   Denied that URS Corporation Southern committed tortious acts in the State of

Florida. All other allegations in paragraph 4 are admitted.

   5.   Admitted.

6.      Denied.

7.      Admitted.

8.      Admitted that Mr. Zimpelman is licensed as a Professional Engineer in Florida. Without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 8.

9.      Admitted that venue is proper in the Southern District of Florida and that on September 3, 2015, Mr. Zimpelman filed a Notice of Removal pursuant to 28 U.S.C. § 1441. All other allegations in paragraph 9 are denied.

<u>GENERAL ALLEGATIONS</u>

10.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

11.     Admitted that the Project consisted of three phases. All other allegations in paragraph 11 are denied.

12.     Admitted.

13.     Admitted that URS Corporation Southern agreed to perform certain services in exchange for payment as more fully described in the Professional Services Agreement. All other allegations in paragraph 13 are denied.

14.     Denied.

15.     Admitted that URS Corporation Southern—not URS Corporation—submitted a proposal for services associated with the Project. All other allegations in paragraph 15 are denied.

16.     Copies of the Notice of Award and Exhibit A, Exhibit B, and Exhibit C are attached as Composite Exhibit 2 to the Amended Complaint; otherwise, Denied. On or about

July 30, 2010, the City issued a Notice of Award to URS Corporation Southern—not URS Corporation. The City and URS Corporation Southern agreed to Exhibit A (Scope of Work), Exhibit B (Fee Schedule), and Exhibit C (Area Requirements & Reporting).

17.     A copy of the Amendment is attached as Exhibit 3 to the Amended Complaint; otherwise, Denied. In or around October 2011, the City and URS Corporation Southern—not URS Corporation—executed an Amendment.

18.     Denied.

19.     Denied.

20.     Admitted.

21.     Admitted that Mr. Zimpelman was the engineer that stamped, signed, and dated the structural drawings for the Project. All other allegations in paragraph 21 are denied.

22.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

23.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

24.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

25.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

26.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

27.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

28.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

29.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

30.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

31.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

32.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Admitted that the pre-bid basis of design product was the Kawneer IR501UT (thermal) Storefront System. All other allegations in paragraph 45 are denied.

46.     Admitted that in March 2012, Skanska posed questions about the Kawneer IR501UT storefront system in Bid Inquiry List #02 and Bid Inquiry List #05. All other allegations in paragraph 46 are denied.

47.     Admitted that in March 2012, URS Corporation Southern provided additional information about the Kawneer basis of design system in Bid Inquiry List #02 and Bid Inquiry List #05. Denied that URS Corporation Southern required installation of a Crawford Tracey Series Pro-Tech 45SG Aluminum Window Wall System. Without knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 47.

48.     Denied.

49.     Denied.

50.     Admitted that construction of the GMP 2 work commenced in or around June 2012. All other allegations in paragraph 50 are denied.

51.     Admitted that, on or about September 4, 2012, Skanska submitted RFI 066. All other allegations in paragraph 51 are denied.

52.     Admitted that URS Corporation Southern timely and fully responded to RFI 066. All other allegations in paragraph 52 are denied.

53.     Denied.

54.     Denied.

55.     Admitted

56.     Denied.

57.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

58.     Denied.

59.     Denied.

60.     Admitted that the basis of design was 5 inch thick panels and that drawing A606 states that actual final precast concrete wall panel thicknesses to be determined by Skanska's precast panel delegated design engineer and manufacturer. All other allegations in paragraph 60 are denied.

61.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

62.     Denied.

63.     Denied.

64.     Admitted that URS offered the Trulite 3100 system as another acceptable alternative in September 2012. All other allegations in paragraph 64 are denied.

65.     Denied.

66.     Denied.

67.     Admitted that URS Corporation Southern participated in discussions about windows, glazing, and precast wall panels in September and October 2012. All other allegations in paragraph 67 are denied.

68.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

69.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

70.     Admitted that Construction Field Order 004.002 is dated October 29, 2012. All other allegations in paragraph 70 are denied.

71.     Denied.

72.     Admitted that, in or around June 2013, Skanska created a mockup window installation using a "z-clip" and installed it at the Project to demonstrate the efficacy of a proposed installation method to fix the window installation problems caused by Skanska and its subcontractors. All other allegations in paragraph 72 are denied.

73.     Admitted that URS Corporation Southern accepted Skanska's fix for the problems caused by Skanska and its subcontractors which involved a substitution of the "z-clip" for the aluminum angle mounts removed by Skanska and its subcontractors. All other allegations in paragraph 73 are denied.

74.     Admitted that the City was fully informed of the differences between the Trulite 3100 system and alternative systems including the Crawford Tracey Pro-Tech 45SG system, and that the City knowingly accepted the Trulite 3100 system. All other allegations in paragraph 74 are denied.

75.     Admitted that the Crawford Tracey Pro-Tech 45SG System was an externally glazed system. All other allegations in paragraph 75 are denied.

76.     Admitted that the Trulite 3100 system was an internally glazed system. All other allegations in paragraph 76 are denied.

77.     Admitted that access to the top portion of the glass was less convenient with the Trulite 3100 system alternative systems, and that the City knowingly accepted the Trulite 3100 system. All other allegations in paragraph 77 are denied.

78.     Admitted that the City chose to modify the top row of the Truelite 3100 system to improve access. Admitted that the changes were made to accommodate the City's preference. All other allegations in paragraph 78 are denied.

79.     Denied.

80.     Denied.

81.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

82.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

83.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

84.     Admitted that the City notified URS Corporation Southern of cracks in the elevated concrete slabs in the Police Department Building on or about March 28, 2013 and requested that URS Corporation Southern investigate and advise the City. Without knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 84.

85.     Admitted that in its notification to URS Corporation Southern, the City advised that the investigation needed to be done immediately. Without knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 85.

86.     Admitted that on or about March 29, 2013, URS Corporation Southern responded to the City by advising the City that it had observed exposed rebar in the underside of the concrete cracks in the PD Building. Admitted that URS Corporation Southern suggested that the City consider issuing a stop work order for safety concerns for work in column bays associated with the observed cracks while the cause of the concrete cracks was investigated. Without

knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 86.

87.     Admitted that on or about March 29, 2013, the City issued a stop work order directing Skanska to temporarily suspend the installation of the Precast at the PD Building. Without knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 87.

88.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

89.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

90.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

91.     Admitted that URS Corporation Southern issued Revision 11 on or about June 27, 2013. All other allegations in paragraph 91 are denied.

92.     Admitted that URS Corporation Southern issued Revision 14 on or about July 9, 2013. All other allegations in paragraph 92 are denied.

93.     Admitted that URS Corporation Southern issued Revision 17 and Revision 19. All other allegations in paragraph 93 are denied.

94.     Denied.

95.     Admitted that Mr. Zimpelman was the engineer that stamped, signed, and dated the structural drawings for the Project. All other allegations in paragraph 95 are denied.

96.     Admitted that the City, Skanska, and URS Corporation Southern performed investigations. Admitted that the City lifted the Stop Work Order around August 2013. Without

knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 96.

97.     Without knowledge or information sufficient to form a belief about the truth of the allegations.

98.     Admitted that URS Corporation Southern and Mr. Zimpelman investigated the structural design of the PD Building after Revision 11, Revision 14, Revision 17, and Revision 19. Without knowledge or information sufficient to form a belief about the truth of all other allegations in paragraph 98.

99.     Admitted that URS Corporation Southern issued Revision 20 in November 2013. All other allegations in paragraph 99 are denied.

100.    Denied.

101.    Admitted that Revision 20 called for, among other things, the enlargement of the footprint of foundations at certain shear wall locations along with an increase in both the height and mass.

102.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

103.    Admitted that to perform Revision 20, Skanska had to excavate and expose the below-grade concrete foundation. Without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 103.

104.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

105.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

106.    Admitted.

107.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

108.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

109.    Admitted that in a letter dated December 12, 2013, the City acknowledged receipt of Revision 20 and wrongfully and prematurely demanded that URS Corporation Southern reimburse the City. All other allegations in paragraph 109 are denied.

110.    Admitted that in a letter dated December 12, 2013, the City wrongfully and prematurely demanded that URS Corporation Southern indemnify the City. Admitted that a copy of the letter is attached as Exhibit 18 to the Amended Complaint. All other allegations in paragraph 110 are denied.

111.    Admitted that in a letter dated December 20, 2013, URS Corporation Southern responded to the City's wrongful and premature demands for reimbursement and indemnification. Admitted that a copy of the letter is attached as Exhibit 19 to the Amended Complaint. All other allegations in paragraph 111 are denied.

112.    Denied.

113.    Admitted that in January 2014 and July 2014, the City wrongfully and prematurely demanded that URS Corporation Southern indemnify the City for Revision 20 and refused to substantiate its demands to URS Corporation Southern. All other allegations in paragraph 113 are denied.

114.    Admitted that a copy of URS Corporation Southern's letter dated August 6, 2014 is attached as Exhibit 20 to the Amended Complaint. All other allegations in paragraph 114 are denied.

115.    Denied.

116.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

117.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

118.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

119.    Admitted that URS Corporation Southern determined that Phase 2 of the Project met the requirements for Substantial Completion on May 2, 2014. All other allegations in paragraph 119 are denied.

120.    Admitted that the City issued Certificates of Occupancy and Completion on December 8, 2014. Without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 120.

121.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

122.    Admitted that the Design Agreement does not impose on URS Corporation Southern any obligation to certify Substantial Completion. Admitted that as of October 7, 2015, Skanska had not achieved Substantial Completion. All other allegations in paragraph 122 are denied.

123.    Denied.

<u>COUNT I: BREACH OF CONTRACT AGAINST URS CORPORATION SOUTHERN</u>
<u>(BY THE CITY ONLY)</u>

URS Corporation Southern incorporates and realleges its responses to paragraphs 1, 2, 4, 5, and 9 through 123.

124.    Denied.

125.    Denied.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Denied.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

<u>COUNT II: BREACH OF CONTRACT AGAINST URS CORPORATION</u>
<u>(BY THE CITY ONLY)</u>

The allegations contained in Count II are not directed to URS Corporation Southern. To the extent an answer is required, URS Corporation Southern denies the allegations in Count II.

<u>COUNT III: CONTRACTUAL INDEMNITY AGAINST URS CORPORATION SOUTHERN</u>
<u>(BY THE CITY ONLY)</u>

URS Corporation Southern incorporates and realleges its responses to paragraphs 1, 2, 4, 5, and 9 through 123.

147.    Admitted.

148.    Denied.

149.    Denied.

150.    Denied.

151.    Denied.

152.    Denied.

153.    Denied.

154.    Denied.

155.    Denied.

156.    Denied.

157.    Denied.

158.    Denied.


## COUNT IV: CONTRACTUAL INDEMNITY AGAINST URS CORPORATION (BY THE CITY ONLY)

The allegations contained in Count IV are not directed to URS Corporation Southern. To the extent an answer is required, URS Corporation Southern denies the allegations in Count IV.


## COUNT V: COMMON LAW INDEMNITY AGAINST URS CORPORATION SOUTHERN (BY THE CITY ONLY)

URS Corporation Southern incorporates and realleges its responses to paragraphs 1, 2, 4, 5, and 9 through 123.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

180.    Denied.

## COUNT VI: COMMON LAW INDEMNITY AGAINST URS CORPORATION
### (BY THE CITY ONLY)

The allegations contained in Count VI are not directed to URS Corporation Southern. To the extent an answer is required, URS Corporation Southern denies the allegations in Count VI.

## COUNT VII: PROFESSIONAL NEGLIGENCE AGAINST URS CORPORATION
### SOUTHERN
### (BY THE CITY ONLY)

URS Corporation Southern incorporates and realleges its responses to paragraphs 1, 2, 4, 5, and 9 through 123.

191.    Denied.

192.    Denied.

193.    Denied.

194.    Denied.

## COUNT VIII: PROFESSIONAL NEGLIGENCE AGAINST URS CORPORATION
### (BY THE CITY ONLY)

The allegations contained in Count VIII are not directed to URS Corporation Southern. To the extent an answer is required, URS Corporation Southern denies the allegations in Count VIII.

## COUNT IX: PROFESSIONAL NEGLIGENCE AGAINST URS CORPORATION SOUTHERN
## (BY SKANSKA ONLY)

URS Corporation Southern incorporates and realleges its responses to paragraphs 1, 3 through 5, and 9 through 123.

200.    Denied.

201.    Denied.

202.    Denied.

203.    Denied.

204.    Denied.

205.    Without knowledge or information sufficient to form a belief about the truth of the allegations.

206.    Denied.

207.    Denied.

## COUNT X: PROFESSIONAL NEGLIGENCE AGAINST URS CORPORATION
## (BY SKANSKA ONLY)

The allegations contained in Count X are not directed to URS Corporation Southern. To the extent an answer is required, URS Corporation Southern denies the allegations in Count X.

## COUNT XI: PROFESSIONAL NEGLIGENCE AGAINST MR. ZIMPELMAN
## (BY THE CITY ONLY)

The allegations contained in Count XI are not directed to URS Corporation Southern. To the extent an answer is required, URS Corporation Southern denies the allegations in Count XI.

<u>COUNT XII: PROFESSIONAL NEGLIGENCE AGAINST MR. ZIMPELMAN</u>
<u>(BY SKANSKA ONLY)</u>

The allegations contained in Count XII are not directed to URS Corporation Southern. To the extent an answer is required, URS Corporation Southern denies the allegations in Count XII.

<u>AFFIRMATIVE DEFENSES</u>

<u>AS TO THE CITY'S CLAIMS AGAINST URS CORPORATION SOUTHERN</u>

1.      **No Causation.** As its first affirmative defense, URS Corporation Southern asserts that, to the extent the City incurred monetary damages, said damages were caused by the acts and/or omissions of the City (including the City's employees, agents, and assigns) and/or the acts Skanska (including Skanska's employees, agents, and assigns) and/or by the acts and/or omissions of third parties not within URS Corporation Southern's control. Acts and omissions known to date include, *inter alia*:

> a.      The City's failure to inspect the work of its contractor.

> b.      The City's failure to timely implement Revision 20.

> c.      The City's failure to adequately and timely fund the Project.

> d.      The City's overpayments to Skanska.

> e.      The City's payments to Skanska of amounts not due or owing pursuant to Skanska's contract.

> f.      The City's payment of Skanska's claims that were false, fraudulent, or inflated.

> g.      The City's payment of Skanska's claims against the advice of the City's consultants.

h.      The City's failure to timely provide URS Corporate Southern with accurate information required for URS Corporation Southern's performance of services.

i.      The City's failure to provide timely and accurate as-built information about the work in place.

j.      The City's failure or refusal to require its contractor to complete Phase 2 and minimize delays to Phase 2 while work on Phase 3 was ongoing.

k.      The City's failure to provide all criteria and full information as to the City's requirements for the Project.

l.      Skanska's failure to construct the work in accordance with the drawings, specifications, and other contract documents.

m.      Skanska's failure to guard against defects in its work and the work of its subcontractors.

n.      Skanska's failure to coordinate, manage, and direct its work and the work of its subcontractors.

o.      Skanska's failure to prepare and distribute coordination drawings.

p.      Skanska's failure to timely perform its work in accordance with the approved Project schedule and meet all contractual milestones.

q.      Skanska's failure to timely procure materials and equipment.

r.      Skanska's failure to timely hire and contract with subcontractors.

s.      Skanska's failure to maintain and update the Project schedule.

t.      Skanska's manipulation of the Project schedule.

18

u.      Skanska's failure to complete Phase 2 and minimize delays to Phase 2 while work on Phase 3 was ongoing.

v.      Skanska's failure to inspect its own work and notify the City or other inspection and testing agencies.

w.      Skanska's negligence in the design of the parking garage, precast wall panels and coordination of the windows and wall panels.

x.      Skanska's failure to maintain consistent management and excessive turnover.

y.      Skanska's failure to timely pay its subcontractors and suppliers.

2.      **Concurrent Delay.** As its second affirmative defense, URS Corporation Southern asserts that the City is not entitled to recover alleged delay costs incurred during periods of concurrent delay. Delays, if any, attributable to URS Corporation Southern were concurrent with delays caused by the City, the City's employees, agents, and/or assigns, Skanska (including Skanska's subcontractors, suppliers, employees, agents and assigns) and/or by the acts of third parties not within URS Corporation Southern's control.

3.      **No Critical Path Delays.** As its third affirmative defense, URS Corporation Southern asserts that delays attributable to URS Corporation Southern, if any, did not impact the Project's critical path. Therefore, URS Corporation Southern was not the cause-in-fact of any delays to completion of the project.

4.      **Independent Tort Doctrine.** As its fourth affirmative defense, URS Corporation Southern asserts that the City's professional negligence claim against URS Corporation Southern (Count VII) is barred by the independent tort doctrine. Under Florida's independent tort rule, a party to a contract cannot recover economic loss in tort against the other contracting party unless

there is additional, wrongful conduct chargeable to that party which amounts to a tort independent and separate from the claimed breach of contract. The City's professional negligence claim is based on the same alleged wrongful conduct upon which the City bases its breach of contract claim (Count I). The City has not alleged any negligent conduct that is independent, separable, and distinct from the alleged breach of contract. Therefore, the City's tort claims against URS Corporation Southern are barred.

5.      **Failure to Mitigate.** As its fifth affirmative defense, URS Corporation Southern asserts that, to the extent the City was damaged, the City failed to take reasonable and necessary steps to mitigate its damages. URS Corporation Southern is not liable for damages that the City failed to mitigate. The City's failures to mitigate its damages include, without limitation:

a.      The City's failure to inspect the work of its contractor.

b.      The City's failure to timely implement Revision 20. URS Corporation Southern provided the City with Revision 20 in November 2013, but the City withheld giving its contractor notice to proceed with the Revision 20 work until November 2014. The City's delay unnecessarily prolonged the duration of the Project.

c.      The City's failure to adequately fund the Project so as to allow construction to progress unhindered and without unnecessary delay.

d.      The City's overpayment of amounts not due and owing under Skanska's contract.

e.      The City's payment of claims that were false, fraudulent, or inflated.

f.      The City's payment of claims against the advice of its own consultants.

g.      The City's failure to provide timely and accurate information required for performance of URS Corporation Southern's services.

h.      The City's failure to provide timely and accurate as-built information about the work in place. The City's delay unnecessarily prolonged the duration of the Project.

i.      The City's failure or refusal to require its contractor to complete Phase 2 and minimize delays to Phase 2 while work on Phase 3 was ongoing.

j.      The City's failure to provide all criteria and full information as to the City's requirements for the Project.

6.      **Reimbursement Bar.** As its sixth affirmative defense, URS Corporation Southern asserts that the City agreed to pay by itself and not to look to URS Corporation Southern for reimbursement of certain costs. Specifically, by the express terms of the Professional Services Agreement, the City agreed that unless costs caused by URS Corporation Southern's errors exceed five percent of the total construction cost of the Project, the City shall not look to URS Corporation Southern for reimbursement of costs caused by errors and omission. Professional Services Agreement § 2.5.1. The costs of construction caused solely by URS Corporation Southern do not exceed the agreed five percent threshold; therefore, the City is responsible to pay the costs and may not look to URS Corporation Southern for reimbursement.

7.      **Prior Breach.** As its seventh affirmative defense, URS Corporation Southern asserts that the City breached the Professional Services Agreement. The City's breaches include, without limitation:

a.      Failing or refusing to comply with the requirements of Section 2.5.1 of the Professional Services Agreement, which requires the City to notify URS Corporation

Southern within 3 days of the discovery of any alleged architectural/engineering error or omission so as to allow URS Corporation Southern to participate in the negotiations resolving the claim between the City and its contractor. The City did not timely notify URS Corporation Southern of alleged design errors or omissions, and URS Corporation Southern was not invited to take part in any negotiations between the City and its contractor.

b.      Failing or refusing to compensate URS Corporation Southern for all design services and construction administration services rendered.

c.      Failing to provide URS Corporation Southern with timely and accurate as-built information about the work in place.

d.      Failing to provide URS Corporation Southern with timely and accurate information required for performance of URS Corporation Southern's services.

e.      Failing to provide all criteria and full information as to the City's requirements for the Project.

f.      Failing to pay for additional costs pursuant to Section 2.5.1 of the Professional Services Agreement.

8.      **Setoff.** As its eighth affirmative defense, URS Corporation Southern asserts that it is entitled to a setoff for all costs incurred as a result of the City's breaches of the Professional Services Agreement, including, without limitation, additional design services, additional construction administration services, and extended construction administration services.

9.      **Setoff.** As its ninth affirmative defense, URS Corporation Southern asserts that it is entitled to a setoff for all unpaid amounts under the Professional Services Agreement,

including, without limitation, amounts for design services and construction administration services.

10.     **Setoff.** As its tenth affirmative defense, URS Corporation Southern asserts that, to the extent the City has received payments or any kind of benefit for some or all of the damages allegedly incurred by the City, URS Corporation Southern is entitled to a setoff.

11.     **Betterment.** As its eleventh affirmative defense, URS Corporation Southern asserts that the damages sought by the City are not recoverable due to the betterment doctrine. The City cannot recover from URS Corporation Southern the cost of enhancements or improvements to the Project. The City improved the Project beyond simple remediation, and the City cannot claim as damages amounts for enhancements or improvements.

12.     **First Costs.** As its twelfth affirmative defense, URS Corporation Southern asserts that the damages sought by the City are not recoverable due to the first cost doctrine. The City cannot recover from URS Corporation Southern costs reasonably required to construct the Project.

13.     **Contractual Indemnity Provisions Void.** As its thirteenth affirmative defense, URS Corporation Southern asserts that URS Corporation Southern has no duty to indemnify, defend, or hold harmless the City. The indemnity provisions in the Professional Services Agreement are void as against public policy and unenforceable pursuant to Sections 725.06 and 725.08, Florida Statutes.

14.     **No Duty to Defend.** As its fourteenth affirmative defense, URS Corporation Southern asserts that URS Corporation Southern has no duty defend the City. A professional services contract entered into with a public agency may not require a design professional to

defend the public agency, and any such provision is void as against public policy and unenforceable pursuant to Section 725.08, Florida Statutes.

15. **No Common Law Indemnity because the City Is at Fault.** As its fifteenth affirmative defense, URS Corporation Southern asserts that the City's common law indemnity claim against URS Corporation Southern (Count V) is barred. For a party to prevail on a claim of common law indemnity, the party seeking indemnification must be without fault, and its liability must be vicarious and solely for the wrong of another. The City is not without fault for the damages allegedly incurred by Skanska and claimed against the City. Therefore, the City is precluded from bringing a common law indemnity claim against URS Corporation Southern.

16. **No Contractual Indemnity because the City Is at Fault.** As its sixteenth affirmative defense, URS Corporation Southern asserts that the City's contractual indemnity claim against URS Corporation Southern (Count III) is barred as a matter of law because:

  a.  URS Corporation Southern received no notice and had no opportunity to participate in the settlement with Skanska.

  b.  The City had no actual liability to Skanska in respect of Skanska's claims.

  c.  The settlement with Skanska was not reasonable.

  d.  The settlement was the result of fraud or collusion between Skanska and the City.

17. **No Breach.** As its seventeenth affirmative defense, URS Corporation Southern asserts that it did not fall below any standard of care owed to the City.

18. **Statute of Limitations.** As its eighteenth affirmative defense, URS Corporation Southern asserts that the City's claims are barred by the applicable statute of limitations. An action for professional malpractice must be raised within 2 years from the time the cause of

action was discovered or should have been discovered with the exercise of due diligence. § 95.11(4)(a), Fla. Stat.

19.     **Breach of Implied Covenant of Good Faith and Fair Dealing.** As its nineteenth affirmative defense, URS Corporation Southern asserts that the City breached the implied covenant of good faith and fair dealing. The City acted in bad faith, contravened the reasonable contractual expectations of URS Corporation Southern, and deprived URS Corporation Southern of the benefits of the agreement by:

a.     Failing or refusing to give URS Corporation Southern notice and an opportunity to participate as required by Section 2.5.1 of the Professional Services Agreement;

b.     Colluding with Skanska;

c.     Demanding that URS Corporation Southern indemnify the City for the City's unreasonable and inflated settlement with Skanska;

d.     Entering into contract modifications with Skanska that materially changed the scope of Skanska's work and the relationship of the parties beyond what URS Corporation Southern agreed to in its contract with the City;

e.     Abandoning liquidated damages accrued owed by Skanska pursuant to Skanska's contract after putting Skanska on notice that the City was assessing liquidated damages;

f.     Abandoning the "no damages for delay" provision in Skanska's contract after putting Skanska on notice of Project delays caused by Skanska; and

g.     Failing to insist that Skanska provide compliant schedules and schedule updates.

20.     **Failure to Satisfy Condition Precedent.** As its twentieth affirmative defense, URS Corporation Southern asserts that the City failed or refused to give URS Corporation Southern notice and an opportunity to participate as required by Section 2.5.1 of the Professional Services Agreement. Notice and an opportunity to participate is a condition precedent that must be satisfied.

21.     **Waiver.** As its twenty-first affirmative defense, URS Corporation Southern asserts that the City's claims are barred by the City's failure or refusal to give URS Corporation Southern notice and an opportunity to participate as required by Section 2.5.1 of the Professional Services Agreement. The failure to give notice and an opportunity to participate constitutes a clear waiver by the City of any costs caused by errors and omissions for which the City is now seeking reimbursement.

22.     **Waiver.** As its twenty-second affirmative defense, URS Corporation Southern asserts that the City's delay claims are barred because the City changed the work following the contractually required date for substantial completion and failed to enforce the contractual substantial completion date. The City continued issuing design changes and changes for new work after the contractually required date for substantial completion. The City's conduct in issuing design changes and changes for new work after the contractually required date for substantial completion constitutes waiver of the time for performance provisions against URS Corporation Southern and the City's contractor. The City cannot now seek reimbursement from URS Corporation Southern for gratuitous payments made to the City's contractor resulting from the City's failure or refusal to enforce contractual time deadlines against its contractor.

23.     **Illegal and Void Contract.** As its twenty-third affirmative defense, URS Corporation Southern asserts that Skanska's contract with the City is illegal and void as against

public policy because it was awarded in violation of Florida's mandatory competitive selection laws. Under Florida public procurement law, the City was required to competitively award the construction services for the Project. § 255.20, Fla. Stat. The City awarded the contract to Skanska in violation of Section 255.20, Florida Statutes, and Section 287.055, Florida Statutes. The City did not use the competitive negotiation procedure required by Section 287.055. There is no legal remedy for that which is itself illegal. The City may not pursue URS Corporation Southern for any damages flowing directly from the rights wrongfully obtained pursuant to the Skanska contract or growing out of the Skanska contract because the Skanska contract is illegal and unenforceable.

24.   **Illegal and Void Contract.** As its twenty-fourth affirmative defense, URS Corporation Southern asserts that Skanska's contract with the City is illegal and void as against public policy because the City made material alterations to the contract after it was awarded to Skanska. A public entity is not entitled to omit or alter material provisions required by the Request for Proposals. The City made material alterations to the contract terms set out in the Request for Proposals when it awarded the contract to Skanska. The City exhibited favoritism to Skanska by accepting a contract that contained terms never mentioned by the Request for Proposals, and which resulted in the public getting less than what was bargained for. There is no legal remedy for that which is itself illegal. The City may not pursue URS Corporation Southern for any damages flowing directly from the rights wrongfully obtained pursuant to the Skanska contract or growing out of the Skanska contract because the Skanska contract is illegal and unenforceable.

25. **Time Is Not of the Essence.** As its twenty-fifth affirmative defense, URS Corporation Southern asserts that time was not made of the essence in the Professional Services Agreement.

26. **Waiver.** As its twenty-sixth affirmative defense, URS Corporation Southern asserts that the City waived its claims against URS Corporation Southern by:

      a.     Entering into contract modifications with Skanska that materially changed the scope of Skanska's work and the relationship of the parties beyond what URS Corporation Southern agreed to in its contract with the City;

      b.     Abandoning liquidated damages owed by Skanska pursuant to Skanska's contract after putting Skanska on notice that the City was assessing liquidated damages;

      c.     Abandoning the "no damages for delay" provision in Skanska's contract after putting Skanska on notice of Project delays caused by Skanska; and

      d.     Failing to insist that Skanska provide compliant schedules and schedule updates.

<u>AS TO SKANSKA'S CLAIMS AGAINST URS CORPORATION SOUTHERN</u>

27. **No Causation.** As its twenty-seventh affirmative defense, URS Corporation Southern asserts that, to the extent the Skanska was damaged, said damages were caused by the acts of Skanska, Skanska's employees, subcontractors, suppliers, agents, or assigns, or by the acts of third parties not within URS Corporation Southern's control including, without limitation:

      a.     Skanska's failure to construct the work in accordance with the drawings, specifications, and other contract documents.

b.      Skanska's failure to guard against defects in its work and the work of its subcontractors.

c.      Skanska's failure to coordinate, manage, and direct its work and the work of its subcontractors.

d.      Skanska's failure to create coordination drawings.

e.      Skanska's failure to timely perform its work in accordance with the approved Project schedule and meet all contractual milestones.

f.      Skanska's failure to timely buyout subcontractors.

g.      Skanska's failure to maintain and update the Project schedule.

h.      Skanska's manipulation of the Project schedule.

i.      Skanska's failure to complete Phase 2 and minimize delays to Phase 2 while work on Phase 3 was ongoing.

j.      Skanska's failure to inspect its own work and notify the City or other inspection and testing agencies.

k.      The City's failure to inspect the work of its contractor.

l.      The City's failure to timely implement Revision 20.

m.      The City's failure to adequately fund the Project so as to allow construction to progress unhindered and without unnecessary delay.

n.      The City's overpayment of amounts not due and owing under Skanska's contract.

o.      The City's payment of claims that were false, fraudulent, or inflated.

p.      The City's payment of claims against the advice of its own consultants.

q.      The City's failure to provide timely and accurate information required for performance of URS Corporation Southern's services.

r.      The City's failure to provide timely and accurate as-built information about the work in place.

s.      The City's failure or refusal to require its contractor to complete Phase 2 and minimize delays to Phase 2 while work on Phase 3 was ongoing.

t.      The City's failure to provide all criteria and full information as to the City's requirements for the Project.

28.    **Concurrent Delay.** As its twenty-eighth affirmative defense, URS Corporation Southern asserts that Skanska is not entitled to recover alleged delay costs incurred during periods of concurrent delay. Delays, if any, attributable to URS Corporation Southern were concurrent with delays caused by the City, the City's employees, agents, and/or assigns, Skanska (including Skanska's subcontractors, suppliers, employees, agents and assigns) and/or by the acts of third parties not within URS Corporation Southern's control.

29.    **No Critical Path Delays.** As its twenty-ninth affirmative defense, URS Corporation Southern asserts that any delays attributable to URS Corporation Southern did not impact the Project's critical path. Therefore, URS Corporation Southern was not the cause-in-fact of any delays to completion of the Project.

30.    **Failure to Mitigate.** As its thirtieth affirmative defense, URS Corporation Southern asserts that, to the extent Skanska was damaged, Skanska failed to take reasonable and necessary steps to mitigate its damages, and as such, URS Corporation Southern is not liable for said damages. Skanska's failures to mitigate its damages include, without limitation:

a.      Skanska's failure to complete Phase 2 and minimize delays to Phase 2 while work on Phase 3 was ongoing.

b.      Skanska's slowing down, suspension, and stoppage of construction activities.

31.      **Setoff.** As its thirty-first affirmative defense, URS Corporation Southern asserts that it is entitled to a setoff for all costs incurred as a result of Skanska's slowing down, suspension, and stoppage of construction activities, including, without limitation, additional design services, additional construction administration services, and extended construction administration services.

32.      **Setoff.** As its thirty-second affirmative defense, URS Corporation Southern asserts that, to the extent Skanska has received payments or any kind of benefit for some or all of the damages allegedly incurred by Skanska, URS Corporation Southern is entitled to a setoff.

33.      **Sovereign Immunity.** As its thirty-third affirmative defense, URS Corporation Southern asserts that Skanska's claims are barred by sovereign immunity afforded to URS Corporation Southern pursuant to Section 768.28(9)(a), Florida Statutes.

34.      **No Duty.** As its thirty-fourth affirmative defense, URS Corporation Southern asserts that Skanska's professional negligence claim (Count IX) is barred because URS Corporation Southern does not owe a duty of care to Skanska. URS Corporation Southern was not a supervising design professional on the Project.

35.      **No Breach.** As its thirty-fifth affirmative defense, URS Corporation Southern asserts that it did not fall below any standard of care owed to Skanska.

36.      **Failure to Satisfy Condition Precedent.** As its thirty-sixth affirmative defense, URS Corporation Southern asserts that Skanska failed to maintain and update the Project

schedule. Maintenance of an up-to-date and accurate Project schedule is a condition precedent that must be satisfied before Skanska can make a claim for delay damages.

37.    **Illegal and Void Contract.** As its thirty-seventh affirmative defense, URS Corporation Southern asserts that Skanska's contract with the City is illegal and void as against public policy because it was awarded in violation of Florida's mandatory competitive selection laws. Under Florida public procurement law, the City was required to competitively award the construction services for the Project. § 255.20, Fla. Stat. The City awarded the contract to Skanska in violation of Section 255.20, Florida Statutes, and Section 287.055, Florida Statutes. The City did not use the competitive negotiation procedure required by Section 287.055. There is no legal remedy for that which is itself illegal. Skanska may not pursue URS Corporation Southern for any damages flowing directly from the rights wrongfully obtained pursuant to the Skanska contract or growing out of the Skanska contract because the Skanska contract is illegal and unenforceable.

38.    **Illegal and Void Contract.** As its thirty-eighth affirmative defense, URS Corporation Southern asserts that Skanska's contract with the City is illegal and void as against public policy because the City made material alterations to the contract after it was awarded to Skanska. A public entity is not entitled to omit or alter material provisions required by the Request for Proposals. The City made material alterations to the contract terms set out in the Request for Proposals when it awarded the contract to Skanska. The City exhibited favoritism to Skanska by accepting a contract that contained terms never mentioned by the Request for Proposals, and which resulted in the public getting less than what was bargained for. There is no legal remedy for that which is itself illegal. Skanska may not pursue URS Corporation Southern for any damages flowing directly from the rights wrongfully obtained pursuant to the Skanska

contract or growing out of the Skanska contract because the Skanska contract is illegal and unenforceable.

39.     **Waiver.** As its thirty-ninth affirmative defense, URS Corporation Southern asserts that Skanska waived all delay damages in its contract with the City. "No damages for delay" provisions are enforceable and prevent a party from recovering time-related damages during period of delay.

40.     **Time Is Not of the Essence.** As its fortieth affirmative defense, URS Corporation Southern asserts that time was not made of the essence in the Professional Services Agreement.

41.     **Setoff.** As its forty-first affirmative defense, URS Corporation Southern asserts that it is entitled to a setoff for all amounts owed by Skanska. Under URS Corporation Southern's contract, Skanska is required to pay URS Corporation Southern's fees for change orders requested by Skanska.

<u>DEMAND FOR ATTORNEYS' FEES</u>

URS Corporation Southern has retained the undersigned counsel to represent it in this action and is obligated to pay reasonable attorneys' fees for their services. URS Corporation Southern seeks to recover its attorneys' fees from the City pursuant to the Professional Services Agreement.

<u>JURY TRIAL DEMAND</u>

URS Corporation Southern demands trial by jury for all issues triable as of right by jury.

**SMITH, CURRIE & HANCOCK LLP**

/s/ Eugene Polyak_____
Brian A. Wolf, Esq.
Florida Bar No. 983683
Primary E-mail: bawolf@smithcurrie.com
Secondary E-mail: lcherubin@smithcurrie.com

Eugene Polyak, Esq.
Florida Bar No. 60921
Primary E-mail: gpolyak@smithcurrie.com
Secondary E-mail: tbrown@smithcurrie.com

Christopher M. Horton, Esq.
Florida Bar No. 91161
Primary E-mail: cmhorton@smithcurrie.com
Secondary Email: rweiner@smithcurrie.com

101 N.E. Third Avenue, Suite 1910
Fort Lauderdale, Florida 33301
Tel:      (954) 761-8700
Fax:      (954) 524-6927

***Attorneys for URS Corporation Southern, URS
Corporation, and Mark W. Zimpelman***

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on **March 14, 2016**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and served the foregoing document via email transmission on the parties listed below:

Gary L. Brown, Esq.
Joshua M. Atlas, Esq.
ARNSTEIN & LEHR LLP
200 E. Las Olas Blvd., Suite 1000
Ft. Lauderdale, FL 33301
glbrown@arnstein.com
jmatlas@arnstein.com


*Attorneys for City of Miami Gardens*

William C. Davell, Esq.
Christopher D. Barber, Esq.
MAY, MEACHAM & DAVELL PA
One Financial Plaza, Suite 2602
Ft. Lauderdale, FL 33394
wdavell@mmdpa.com
cbarber@mmdpa.com
lpriddie@mmdpa.com


*Attorneys for Skanska USA Building, Inc.*

**SMITH, CURRIE & HANCOCK LLP**

/s/ Eugene Polyak
Brian A. Wolf, Esq.
Florida Bar No. 983683
Primary E-mail: bawolf@smithcurrie.com
Secondary E-mail: lcherubin@smithcurrie.com

Eugene Polyak, Esq.
Florida Bar No. 60921
Primary E-mail: gpolyak@smithcurrie.com
Secondary E-mail: tbrown@smithcurrie.com

Christopher M. Horton , Esq.
Florida Bar No. 91161
Primary E-mail: cmhorton@smithcurrie.com
Secondary Email: rweiner@smithcurrie.com

101 N.E. Third Avenue, Suite 1910
Fort Lauderdale, Florida 33301
Tel:        (954) 761-8700
Fax:        (954) 524-6927

***Attorneys for URS Corporation Southern, URS Corporation, and Mark W. Zimpelman***